**In the United States District Court**
**for the District of Kansas**
**(Kansas City Docket)**

---

**United States of America**,
Plaintiff,

v. Case No. 22-20047-DDC

**Juan Colbert**
Defendant.

---

## Sentencing Memorandum

---

If there was one thing Juan Colbert learned during his three years at CoreCivic and USP Leavenworth, it was that you do not take threats to your personal safety lightly. How much of that was attributable to the things he saw and experienced in these facilities and how much of that was attributable to the mental health conditions he suffered from as a result of what he saw and experienced is hard to say. Regardless, when he was told that a group of inmates were coming for him, he armed himself for protection. He was then prosecuted and convicted for possession of contraband in prison.

These circumstances call for a below-guideline variance from the PSR's calculated range of 18 to 24 months in prison. With adjustments in criminal history based on the impending Guideline amendments, Mr. Colbert asks this

Court for a sentence of eight months consecutive to the 84-month sentence he is currently serving.

**CoreCivic**[1]

On May 15, 2019, Mr. Colbert was arrested and charged in the Western District of Missouri for unlawful transport of a firearm. He has remained in federal custody since that date. From May 2019 through December 2021, Mr. Colbert lived at CoreCivic in Leavenworth. Mr. Colbert, and all other pretrial detainees, were transferred out of CoreCivic to a new pretrial section of USP Leavenworth at the end of 2021. CoreCivic was then shuttered.

The environment at CoreCivic had deteriorated significantly over the last few years that federal detainees, like Mr. Colbert, were held there. Tragic events that were once seen as anomalies were rapidly becoming commonplace. The facility had become violent, dangerous, and out-of-control.[2] Not only had many clients consistently reported this decline over the final few years, but the data confirmed it.

From February to August of 2021, there was at least one inmate homicide, two major inmate assaults, and one major assault of a staff

---

[1] This section will address 18 U.S.C. 3553(a)(1) and (a)(2)

[2] See https://www.npr.org/2021/09/13/1036576308/biden-ended-contracts-with-private-prisons-so-one-may-turn-to-house-immigrants; https://www.kmbc.com/article/aclu-push-to-close-private-leavenworth-kansas-prison/37995336#.

member reported. As a result of the major assault on staff, CoreCivic conducted a facility-wide shakedown from February 9 to 11, 2021. After that shakedown, things did not improve. The number of physical assaults between detainees, physical assaults between detainees and staff, and use of force incidents (on detainees) continued to rise and remained elevated even after the February 2021 facility-wide shakedown. [Attachment A][3]




[3] This information was supplied by CoreCivic in the form of a spreadsheet created from CoreCivic's internal records.

From July of 2020 to August of 2021, there were only two months with a notable decrease in violent incidents. In February 2021 and August of 2021, the total violent incidents decreased into the twenties. These decreases were undoubtably due to the facility being on complete lockdown (due to major assaults or homicides) during those months. Although the lockdowns decreased the overall violent incidents, maybe the more notable point is that they were not completely eradicated. In fact, use of force events remained surprisingly high during those months.

For Mr. Colbert, the CoreCivic he remained warehoused in from May 2019 through December 2021 continually deteriorated. The 3-month average of violent incidents from September 2018 to November 2018 was 11.67. The 3-month average from May 2021 to July 2021 was 36.67. That is a 318% increase. The incidents nearly tripled. An incarceration defined by extreme violence, constant threat, and lengthy lockdowns was a more severe punishment and a more traumatic experience than the same length of incarceration in a safe facility with fewer restrictions.

These conditions had a direct impact on Mr. Colbert's mental well-being. When Mr. Colbert was interviewed for his presentence investigation report for the Western District of Missouri in 2020, he reported not suffering from any mental illness. That began to change with the steady rise of

violence at CoreCivic. In August 2021, Mr. Colbert began to report symptoms of anxiety and sleeplessness.

1030

13-80A3

**SICK CALL REQUEST / FACE-TO-FACE ENCOUNTER**

**PART A: (To be completed by inmate/detainee patient)**

Date: 8/20/21 Work Assignment: N/A

Work Hours: N/A Housing Assignment: Q-T 101

Reason for requesting Health Services appointment **(BE SPECIFIC):** To See mental Health because I Have Anxiety, restless nights, I need to speak to someone

How long have you had this problem? about a month

Inmate/Detainee Name (print): Juan Colbert Inmate/Detainee Number: 34086045

Inmate/Detainee Signature: Juan Colbert Date of Birth: 9/17/85

**PART B: (Medical Staff Only)**

Sick Call Received by: (signature) [signature]

Date Received: 8/22/21 Time Received: 2300 hours

Again, in September 2021, he made another plea for help. This time, Dr. Johnson evaluated him, diagnosis him with anxiety and depression, and prescribed him medication. [Attachment B]

13-80A3

**SICK CALL REQUEST / FACE-TO-FACE ENCOUNTER**

Mental Health

**PART A: (To be completed by inmate/detainee patient)**

Date: 9/3/21 Work Assignment: N/A

Work Hours: N/A Housing Assignment: Q-T-101

Reason for requesting Health Services appointment **(BE SPECIFIC):** Im Requesting to see mental Health for anxiety, I Cant sleep and I barely Have an apitite, and I'm finding myself in deppression more often than usual.

How long have you had this problem? a little more than a month now

Inmate/Detainee Name (print): Juan Colbert Inmate/Detainee Number: 34086045

Inmate/Detainee Signature: Juan Colbert Date of Birth: 9/17/85

**PART B: (Medical Staff Only)**

Sick Call Received by: (signature) ____

Date Received: __/__/__ Time Received: ____ hours

Despite the new prescription, Mr. Colbert continued to suffer the effects of CoreCivic in the form of mental health struggles. By October 2021, he was requesting an increase in medication.

Medical / Mental Health

Name: Juan Colbert

Date: 10/12/21

Housing assignment: South end, N-209

Problem: I need my mental Health pills increased to the max because my anxiety + depression still plagues me. I cant get sufficient sleep at all!

B Seney 10/13/21

Mr. Colbert continued to struggle through November 2021. He requested another mental health appointment as his concern for his own behavior increases.

Mental Health

13-80A3

**SICK CALL REQUEST / FACE-TO-FACE ENCOUNTER**

**PART A:** **(To be completed by inmate/detainee patient)**

Date: 11/21/21 Work Assignment: Covid porter

Work Hours: Am Hours Housing Assignment: w 109

Reason for requesting Health Services appointment **(BE SPECIFIC):** My Anxiety has gotten bad and I've become overly aggressive. I'm angry all the time it seems because I'm hungry and locked away with no rec nor exercise at all!

How long have you had this problem? Since the middle/end of august

Inmate/Detainee Name (print): Juan Colbert Inmate/Detainee Number: 34086045

Inmate/Detainee Signature: Juan Colbert Date of Birth: 09/17/85

**PART B:** **(Medical Staff Only)**

Sick Call Received by: (signature) [signature]

Date Received: 11/22/21 Time Received: 2230 hours

By December 2021, he was exhibiting symptoms that mirror those exhibited by people suffering from Posttraumatic Stress Disorder.

*Mental Health*

13-80A3

**SICK CALL REQUEST / FACE-TO-FACE ENCOUNTER**

**PART A:** **(To be completed by inmate/detainee patient)**

Date: 12/5/21 Work Assignment: N/A

Work Hours: N/A Housing Assignment: W-109

Reason for requesting Health Services appointment **(BE SPECIFIC):** I need to see mental Health because I've been having Horrific nightmares of violence and my Anxiety is High. I feel boxed in a cage and forgotten about

How long have you had this problem? a while now

Inmate/Detainee Name (print): Juan Colbert Inmate/Detainee Number: 34086045

Inmate/Detainee Signature: Juan Colbert Date of Birth: 09/17/85

**PART B:** **(Medical Staff Only)**

Sick Call Received by: (signature) [signature]

Date Received: 12/6/21 Time Received: [illegible] hours

There was no record available commemorating a December 16, 2021, meeting between Mr. Colbert and Dr. Johnson, but it is clear by the

September 28, 2022, transfer summary that one occurred. [Attachment C] By that time, Mr. Colbert was diagnosed with Major Depressive Disorder, Anxiety Disorder, and Posttraumatic Stress Disorder. Mr. Colbert developed all three disorders while held at CoreCivic. It was with these newly developed mental conditions that he was transferred to USP Leavenworth.

**Hypervigilance**

Criterium E for a diagnosis of Posttraumatic Stress Disorder requires "[m]arked alterations in arousal and reactivity associated with the traumatic event(s), beginning or worsening after the traumatic event(s) occurred, as evidenced by two (or more) of the following. . . ."[4] The third listed behavior within those criteria is "hypervigilance."[5] Hypervigilance is a state of heightened alertness accompanied by behavior that aims to prevent danger.[6]

The way a person behaves when they are experiencing hypervigilance can vary.[7] However, there are some common types of behavior that often occur.[8] Here are the most relevant behaviors for our purposes:[9]

- overreact to things happening around them in a way that may seem hostile.

---

[4] *American Psychiatric Association. Diagnostic and statistical manual of mental disorders. 5th ed. Arlington, VA: American Psychiatric Association; 2013. pp. 271–272.*
[5] *Id.*
[6] https://www.medicalnewstoday.com/articles/319289
[7] Id.
[8] Id.
[9] Id.

- look closely at people to see if they are holding weapons.
- overanalyze situations and believe them to be worse than they are.
- overestimate the chances of a bad thing happening to them physically.

Whether the transfer from CoreCivic to USP Leavenworth was an upgrade is debatable. Mr. Colbert remained exposed to trauma. Even if the exposure to trauma was reduced in the new environs, the symptoms of Posttraumatic Stress Disorder and the resulting behaviors would not disappear. Removing a person from the initial trauma does not eliminate the resulting disorder. In other words, Mr. Colbert was still suffering from Posttraumatic Stress Disorder and still vulnerable to its affects.

**A Perceived or Actual Need for a Shank at USP Leavenworth[10]**

In May 2022, Juan Colbert was assigned to a cell in housing unit A-1 at USP Leavenworth.[11] A few weeks before his sentencing in the Western District of Missouri and a few days before he was found with a six-inch piece of sharpened metal in his waistband, Mr. Colbert was playing poker with several other detainees on the unit.[12] Mr. Colbert won the poker match.[13]

Later that day, Donnell Hall, who was also housed in unit A-1, overheard the five or six detainees that lost the match discussing a plan to

[10] This section will address 18 U.S.C. 3553(a)(1) and (a)(2)
[11] PSR, Paragraph 6.
[12] Interview of Donnell Hall on March 9, 2023.
[13] Id.

"run in" Mr. Colbert's cell with knives to take his stamps and food.[14] Mr. Hall explained that "running in" someone's cell meant that they would assault Mr. Colbert.[15] Mr. Hall pulled Mr. Colbert aside to let him know what he had overheard.[16] Mr. Colbert never returned to the poker table.[17]

Given the disclosure of these assaultive plans, Mr. Colbert's experiences at CoreCivic, and his resulting Posttraumatic Stress Disorder, it is no wonder he armed himself for protection. When Mr. Colbert was discovered to possess the sharpened piece of metal only a couple days after the poker game, he was not using the contraband against anyone.[18] It was discovered upon a pat search of him after correctional offers were called to the unit for an unrelated issue.[19] Mr. Colbert was not known to carry protection, nor was he known to instigate trouble.[20] Nevertheless, Mr. Colbert spent the rest of his time at USP Leavenworth in the Segregated Housing Unit.

Before these events unfolded, Mr. Colbert was known to be a positive and peaceful person. Upon discovering a credible threat to his safety, Mr.

---

[14] Id.
[15] Id.
[16] Id.
[17] Id.
[18] PSR, Paragraph 6.
[19] Id.
[20] Interview of Donnell Hall on March 9, 2023.

Colbert reacted in an attempt to survive. These circumstances justify a downward variance in Mr. Colbert's sentence.

**Upcoming Guideline Amendments**[21]

Mr. Colbert's criminal history score subtotal is seven.[22] He then receives two status points under 4A1.1(d), bringing his total to nine points. This places him in Criminal History Category IV. However, two guideline amendments that take effect on November 1, 2023, would modify his criminal history score and guideline calculation. Although the amendments will not take effect for three more months, instead of requesting a continuance of the sentencing hearing, Mr. Colbert asks this Court to sentence him consistent with the amendments being in effect at this time.

*Change in Status Points [4A1.1]*

The United States Sentencing Commission is changing the way status points are calculated. If a person has six points or less, there will be no additional points for being under court supervision when committing the instant offense. If a person has seven points or more, there will only be one pointed added. Mr. Colbert currently has a subtotal of seven points.[23] His new total would be eight points instead of nine. Eight points, however, is also

[21] This section will address 18 U.S.C. 3553(a)(4)(A) and (a)(6)
[22] PSR, Paragraph 34
[23] Id.

an over-representation of Mr. Colbert's true criminal history calculation, as we explain below.

*Downward Departure for Possession of Marijuana for Personal Use [4A1.3]*

The United States Sentencing Commission is also adding a provision for a downward departure for prior convictions that add points to criminal history for possession of marijuana for personal use. Under USSG §4A1.3, Mr. Colbert has one prior conviction for simple possession of marijuana. In case number 2G041973/111046109/113, Mr. Colbert was convicted of possession of marijuana, no insurance, and driving while suspended. This case counted for one point on his criminal history calculation, but it was also the basis for his status points. All-in-all, this conviction alone accounted for three criminal history points and placed Mr. Colbert in Criminal History Category IV. In other words, without counting the simple possession of marijuana convictions, Mr. Colbert's criminal history subtotal would be six points. In turn, he would not qualify for any status points under the previously discussed amendment. His Criminal History Category would then be III.

Once it is determined the departure applies, the question remains how much the Court should depart downward. We propose the Court consider a reduction consistent with the low-end of Mr. Colbert's guideline range had

the possession of marijuana case not counted as criminal history points. This would put his total criminal history points at six, which would be a Criminal History Category III. With the initial offense level calculated by probation, the low-end of Mr. Colbert's guidelines would be 12 months. The Court should then apply another 4-month variance to account for Mr. Colbert's mental health diagnosis and the imminent threat to his well-being.

**Conclusion**

Juan Colbert entered CoreCivic with no mental health diagnosis. He had no control over the violence he observed and endured there. He exited with Major Depressive Disorder, Anxiety, and Posttraumatic Stress Disorder. His reaction to a credible threat at USP Leavenworth was predictable and understandable. Mr. Colbert is still serving an 85-month sentence from the Western District of Missouri. An additional eight-month sentence is sufficient but not greater than necessary to accomplish the goals of 18 U.S.C. §3553(a).

Respectfully submitted,

s/ Tim Burdick
TIM BURDICK #78152
Assistant Federal Public Defender
500 State Avenue, Suite 201
Kansas City, Kansas 66101
Telephone: (913) 551-6712
Fax: (913) 551-6562
E-mail: Tim_Burdick@fd.org

**CERTIFICATE OF SERVICE**

I certify that on August 10, 2023, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

Ryan Huschka
Assistant United States Attorney
Ryan.Huschka@usdoj.gov

s/ Tim Burdick
TIM BURDICK #78152